**In re Larry L. JAGOURS and Linda C. Jagours, Debtors.**

**Bankruptcy No. 94–40001A.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

June 15, 1999.

Robert E. Barron, Nederland, TX, for Debtors.

David Long, Tyler, TX, for Michael Gross, Standing Chapter 13 Trustee.

## OPINION

DONALD R. SHARP, Chief Judge.

Now before the Court for consideration is the Trustee's Motion To Dismiss Chapter 13 Case for Infeasibility. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed. R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

The debtors, Larry and Linda Jagours ("Debtors"), initiated this case by the filing of a voluntary petition under Chapter 13 of Title 11 on January 3, 1994. An Order Confirming the Debtors' Second Amended Plan of Reorganization was entered on September 15, 1994, which included a pro-

vision for the full payment of the Internal Revenue Service's ("IRS") priority claim in the amount of $975.33 over 50 months. The Claim was for personal income taxes for the calendar year 1991. On March 16, 1998, when the Plan had been substantially consummated, the IRS filed an Amended Claim for post-petition taxes in the total amount of $8,741.45 ($91.83 of the amount sought was designated as unsecured and the remaining portion, $8,649.62, is designated as a priority claim[1]) ("Amended Claim"). The Amended Claim is for tax years ending 12/31/1994, 12/31/1995 and 12/31/1996. Neither the Trustee nor the Debtors have filed objections to the Amended Claim; nor has modification of the Plan been sought. Thereafter, the Trustee filed this Motion To Dismiss Chapter 13 Case For Infeasibility. The Motion came on for consideration pursuant to regular setting when the Trustee placed the Amended Proof of Claim and the Confirmed Chapter 13 Plan into evidence. The Debtor placed the original Proof of Claim into evidence and the parties then relied on oral argument with no further evidence, briefing or citation to authority before the Court. No other party, including the IRS, appeared or participated in the hearing.

### DISCUSSION

The basis of the Trustee's Motion is that the Debtors' Plan became infeasible as a result of the filing of the IRS' Amended Claim which is allowed until objected to and cannot be paid under the terms of the Plan. The Trustee argues that 11 U.S.C. § 1322(a)(2) makes it mandatory that Debtors' Chapter 13 Plan pay all allowed priority claims in full in deferred cash payments. The addition of the amended claim makes that an impossibility as the Plan is structured. The Debtors' position is that the Trustee's argument can only apply to pre-petition indebtedness repre-

---

1. The claim was amended to the slightly reduced amount of $7,040.95 after the hearing on the Trustee's Motion. The substantial por-

tion of such claim is designated as a priority claim, the remainder of $488.16 is designated as unsecured "penalty".

sented by a timely filed proof of claim which must then be treated under the Plan in accordance with 11 U.S.C. § 1322(a)(2).

As stated earlier, the parties did not supply any authorities to the Court and prepared no written briefs. The Court's independent research has failed to discover any case where this exact question has been decided by any court. There is jurisprudence that gives the Court aide in resolving the dispute but unfortunately, some of that jurisprudence appears to be in hopeless disarray.

The Court finds that the IRS claim is allowable under 11 U.S.C. § 1305(a)(1) as a claim for "taxes that become payable to a governmental unit while the case is pending...." The Fifth Circuit Court of Appeals in *In re Ripley*, 926 F.2d 440 (5th Cir.1991) has addressed this issue and determined that 11 U.S.C. § 1305 allows the filing of a proof of claim for taxes that became due after the bankruptcy petition was filed. The dispute in that case centered around what the phrase "becoming payable" meant. The Court determined that taxes became payable on the due date of the return for the period in question. Therefore, any personal income tax for any particular calendar year becomes due on April 15 of the following year. In this case, there can be no question but that the original proof of claim represents a pre-petition claim for 1991 income taxes that became due on April 15, 1992, prior to the petition date of January 3, 1994. The amended claim was for taxes for calendar years ending 1994, 1995 and 1996 or payable respectively April 15, 1995, April 15, 1996, and April 15, 1997. Those are clearly post-petition liabilities and pursuant to the Fifth Circuit in *Ripley*, are allowable claims under 11 U.S.C. § 1305(a)(1) as taxes that became payable to a governmental unit while the case was pending. The issue before the Court is the effect of such filing and whether it renders a plan infeasible as the Trustee believes.

The first question to be answered is whether the claim is actually an "amended" claim as it is denominated. This Court finds that it cannot be considered an amendment of the original claim. To be an amended claim which relates back to the filing of the original claim, the amended claim must bear a relationship to the original claim and must simply be a correction or supplementation of that claim supported by the same operative facts which gave rise to the original claim. That is not the case in this instance since we are dealing with three entirely separate tax years and a claim which has no relation to or bearing on the original claim except that it is for income taxes owed by the same individuals. *See In re Friesenhahn*, 169 B.R. 615 (Bkrtcy.W.D.Tx.1994) for a discussion of what constitutes amended IRS claims and *See U.S. v. Owens*, 84 B.R. 361 (E.D.Pa.1988) which holds that a tax claim for a different calendar year cannot be an amendment to a previously filed claim for a different year. Although the claim is referred to throughout this opinion as an amended claim for ease of reference only, this Court holds that it is not an amended claim but is an entirely new claim.

The Trustee based his argument on his conclusion that the Amended Claim is a priority claim as filed. The Trustee is mistaken. The claim is not a priority and may not be treated as such. 11 U.S.C. § 507(a) designates which expenses and claims have priority. Section 507(a)(8) is pertinent; it deals with claims of governmental units, including the I.R.S. It provides that certain claims have priority including:

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including exten-

sions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) [2] of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case; . . . . . or

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

The Court is bound, when statutory language is unambiguous to interpret statutes according to the clear meaning of their language. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). This Court finds that the Amended Claim, while allowable under § 1305(a)(1), can not be granted priority status under 11 U.S.C. § 507(a)(8). That section of the Bankruptcy Code provides priority status for income taxes ". . . for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including

extensions, after three years before the date of the filing of the petition; . . ." Thus, it is clear that the only way a tax liability can attain priority status is to be for a tax year that ends prior to the petition date with a return due date prior to the petition date. None of the tax periods represented by the amended claim fall within this category and therefore, cannot constitute a priority debt.[3] Therefore, 11 U.S.C. § 1322(a), which sets forth the mandatory requirements for a Chapter 13 plan, is not violated. Specifically, it is not violated because § 1322(a)(2), which requires the debtor to "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title [unless otherwise provided for by agreement]" and upon which the Trustee has relied, does not apply to Amended Claim of the IRS, which is not a priority under § 507.

▮ Pursuant to § 1322(b)(6), a Chapter 13 plan "may . . . provide for the payment of all or any part of any claim allowed under section 1305." 11 U.S.C.A. § 1322(b)(6); *see* 11 U.S.C.A. 1305. *In re Smith*, 192 B.R. 712 (Bkrtcy.E.D.Tenn. 1996). The term "may" is permissive. A debtor is not required under the Code to treat such claims. This treatment of the claim makes perfect sense if one analyses the coherent statutory scheme of the Code in handling post-petition claims. Priority

2. The applicability of the § 523(a)(1)(B) and (C) exceptions has not been argued by these parties.

3. The Court is aware of the holdings in *In re King*, 217 B.R. 623 (Bkrtcy.S.D.Cal.1998) and *In re Bryant*, 1998 WL 412632 (Bkrtcy. E.D.Va.1998) both of which hold that an IRS claim filed under 1305(a)(1) becomes a priority claim. Both of these cases follow the same line of reasoning which is based on their interpretation of 11 U.S.C. § 1305(b) which provides: "Except as provided in subsection (c) of this section, a claim filed under subsection (a) of this section shall be allowed or disallowed under section 502 of this title, but shall be determined as of the date such claim arises, and shall be allowed under section 502(a), 502(b), or 502(c) of this title, or disallowed under section 502(d) or 502(e) of this

title, the same as if such claim had arisen before the date of the filing of the petition."

Both of these cases believe that this subsection of 1305 requiring the claims to be allowed or disallowed under various provisions of 502 of the Code make them a pre-petition claim for all purposes including the application of section 507(a)(8) to determine their priority. This Court believes that to be an erroneous reading of 1305(b) and finds that that subsection merely sets forth the standards for the Court to use in allowing or disallowing the claim on its merits. There is no reason to believe that Congress would have intended that section to also deal with the priority status of the claim under 507(a)(8) unless it listed 507(a)(8) in the list of statutes to be considered.

status is reserved for prepetition claims which must be dealt with in any Chapter 13 Plan. Post-petition claims are not given priority status but the rights of the creditor to collect are not impaired by the Chapter 13 Plan. As stated by one commentary: "If the plan does not provide for postpetition claims, no such claims may be paid under the plan, even if a postpetition creditor files a claim. Although the debtor may choose to amend the plan to accommodate the postpetition claim, the debtor is not required to do so." 8 *Collier on Bankruptcy*, ¶ 1322.10 (1998).[4] Here the Debtors have elected not to treat the Amended Claim under the confirmed Plan. The Debtors election not to modify the Plan to treat the Amended Claim has no effect upon the Plan. The Plan is not made infeasible by operation of § 1322(a)(2), neither is it made infeasible by the election under § 1322(b) or (b)(6).

## CONCLUSION

For the foregoing reasons, the Trustee's Motion To Dismiss Chapter 13 Case For Infeasibility should be denied and an order will be entered accordingly.

4. Cf. *In re Gyulafia,* 65 B.R. 913, 915–16 (Bankr.D.Kan.1986) in which the Court said that when the government has a post-petition tax claim, it has a choice between voluntary participation in the wage-earner plan under section 1305 or going directly against the debtor pursuant to applicable non-bankruptcy law.